RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMMAR ISAM MARQUS,

          *Petitioner*,

      v.

WILLIAM P. BARR, Attorney General,

          *Respondent*.

No. 18-4252

_____

On Petition for Review
from the Board of Immigration Appeals;
No. A 212 373 178.

Decided and Filed:  July 30, 2020

Before:  MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Edward Amir Bajoka, BAJOKA LAW GROUP PLLC, Warren, Michigan, for Petitioner.  Lisa Morinelli, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Ammar Isam Marqus petitions this court to review the decision of the Board of Immigration Appeals ("BIA") denying him deferral of removal under the Convention Against Torture ("CAT") and denying his motion to remand for consideration of new evidence.  For the reasons that follow, we **DENY** in part and **GRANT** in part the petition for review, and **REMAND** for further proceedings consistent with this opinion.

# I.  BACKGROUND

Marqus is a native and citizen of Iraq and was admitted to the United States as a refugee in 2012.  A.R. at 219.  He later adjusted his status to Lawful Permanent Resident.  A.R. at 220. In 2017, he was convicted of attempted criminal sexual conduct under MICHIGAN COMPILED LAWS § 750.520d(1)(b).  A.R. at 220.  As a result, the Government served him with a Notice to Appear and initiated removal proceedings.  *Id*.  His removal hearing was held on March 29, 2018, and both the Government and Marqus submitted evidence for the record.  *Id*.  Against the Government's objections, the Immigration Judge ("IJ") admitted the expert declarations of Daniel Smith, Mark Lattimer, and Shamiran Mako, but excluded the declaration of country-conditions expert Rebecca Heller.  *Id*. at 221 n.3.  On June 5, 2018, the IJ issued an opinion ordering Marqus removed to Iraq.  *Id*. at 244.  The IJ determined that Marqus was ineligible for withholding of removal under the Immigration and Nationality Act ("INA") or the CAT because the "particularly serious crime" bar applied as a result of his conviction for attempted criminal sexual conduct.  *Id*. at 234, 240 (citing 8 U.S.C. § 1158(b)(2)(A)(ii); 8 C.F.R. § 1208.13(c)(1)). The IJ also determined, based on all the evidence, that Marqus was not entitled to deferral of removal under the CAT.  *Id*. at 235, 240 (citing 8 C.F.R. § 1208.17).

Marqus appealed to the BIA the IJ's evidentiary and merits rulings and sought to introduce new evidence.  On November 23, 2018, the BIA dismissed his appeal and denied his request to consider new evidence, which it interpreted as a motion to remand.  *Id*. at 3, 7.  He has petitioned this court to review the BIA's dismissal of his CAT claim and its denial of his motion to remand.   The existing record evidence includes expert declarations, the United States Department of State 2016 Human Rights Report on Iraq ("DOS 2016 Human Rights Report"), and the United States Department of State 2016 International Religious Freedom Report on Iraq ("DOS 2016 Religious Freedom Report").  *Id*. at 447.  The new evidence he seeks to introduce includes an additional country-conditions expert declaration by Belkis Wille, the Department of State 2017 Human Rights Report on Iraq ("DOS 2017 Human Rights Report"), and the United States Department of State 2017 International Religious Freedom Report on Iraq ("DOS 2017 Religious Freedom Report").  *See* Pet. Br. at 23–25.  Both 2017 reports were released after the IJ entered his order of removal.

Marqus believes that he would be tortured if he were forced to return to Iraq because he is Chaldean Christian; has spent a significant amount of time in the United States; has a criminal record; was previously tortured by and deserted from the Iraqi military; was previously targeted, abused, and threatened by the Popular Mobilization Forces ("PMF") (specifically, the El Mahdi army); and lacks the proper identification documents to travel within the country without being stopped, targeted, and tortured by the PMF. A.R. at 222–32, 240–42. The PMF is a security force that provides military support for the Iraqi government and has been known to commit human-rights abuses. *Id*. at 131–32. Marqus claims that he more likely than not would be interrogated and tortured by Iraqi government officials upon entry, and that he otherwise would be targeted and tortured by the PMF. Pet. Br. at 13–14.

## II. CONVENTION AGAINST TORTURE

An applicant seeking CAT relief must demonstrate that she faces a particularized and likely threat of torture at the hands of a public official, or with the consent or acquiescence of a public official. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006). Marqus challenges both the factual and legal basis for the IJ's and BIA's decisions denying him CAT relief. Previously, under *Tran v. Gonzales*, 447 F.3d 937 (6th Cir. 2006), we would not have had jurisdiction to review Marqus's factual challenges because he was removable for a criminal conviction listed in 8 U.S.C. § 1252(a)(2)(C). *See Kilic v. Barr*, -- F.3d --, No. 19-4076, 2020 WL 3888178, at *2 (6th Cir. July 10, 2020). But the Supreme Court recently abrogated *Tran* and held that the statute that precludes judicial review of factual challenges to final orders of removal for certain noncitizens does not apply to CAT claims. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689, 1694 (2020). We accordingly have jurisdiction to review Marqus's factual arguments with respect to his CAT claim. In doing so, we will review the IJ's decision to the extent that the BIA adopted its reasoning. *Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009).

## A. Factual Challenges to Denial of CAT Relief

"[W]hether the BIA correctly considered, interpreted, and weighed the evidence presented" is a question of fact. *Shabo v. Sessions*, 892 F.3d 237, 239 (6th Cir. 2018) (quoting

*Arestov v. Holder*, 489 F. App'x 911, 916 (6th Cir. 2012)), *abrogated on other grounds by Nasrallah*, 140 S. Ct. 1683.**[1]** We review factual findings "under the 'highly deferential' substantial-evidence test, meaning those findings stand 'unless any reasonable adjudicator would be compelled' to disagree." *Kilic*, 2020 WL 3888178, at \*2 (quoting *Nasrallah*, 140 S. Ct. at 1692). Marqus asserts that the IJ erred as a factual matter because Chaldean Christian Iraqis are automatically entitled to CAT relief under *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015), and because he otherwise faces a high likelihood of torture that is particularized to him.

To start, our decision to grant withholding of removal to a Chaldean Christian Iraqi in *Yousif* "did not," as Marqus claims, "establish an entitlement to withholding of removal for all time" for all Chaldean Christian Iraqis. *Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019).**[2]** And on this record, we cannot say that a reasonable adjudicator would be compelled to decide that Marqus faces a high likelihood of torture based on his status as a Chaldean Christian, his ties to the United States, his criminal record, his lack of identity documents, his desertion from the Iraqi military, or his prior experience of violence at the hands of the PMF. While Marqus certainly can point to evidence indicating a risk of torture for Chaldean Christians in similar circumstances, the Government presented the opinions of its own experts who described the country conditions and characterized Marqus's experts' opinions as "farfetched," A.R. at 459, and "outdated," A.R. at 463. Moreover, the BIA and the IJ acknowledged that Marqus had been attacked by the PMF over a decade ago, but found that Marqus failed to establish that the PMF had taken an interest in him more recently or that they would seek him out if he returned to Iraq.

---

**[1]**"Factual errors can qualify as legal errors when 'important facts have been *totally overlooked* and others have been *seriously mischaracterized*.'" *Shabo*, 892 F.3d at 239–40 (citing *Ventura-Reyes v. Lynch*, 797 F.3d 348, 360 (6th Cir. 2015), *abrogated on other grounds by Nasrallah*, 140 S. Ct. 1683). This type of severe factual error is not present in this case.

**[2]**In *Yousif*, this court stated, "There is no dispute that Yousif is a Chaldean Christian and that his status as a Christian alone entitles him to withholding of removal, given that there is a clear probability that he would be subject to future persecution if returned to contemporary Iraq." 796 F.3d at 628 (quotation omitted). As we recently explained,

> [T]his court's statement in *Yousif* was based on the Attorney General's concession in that case that, "in December 2011 . . . conditions in Iraq for Chaldean Christians were so turbulent that Yousif was entitled to withholding of removal." *Yousif* did not establish an entitlement to withholding of removal for all time, nor could it. As *Yousif* itself noted, the "validity of [a] withholding claim w[ill] fluctuate over time" and is determined "at the time of adjudication."

*Ishac*, 775 F. App'x at 788 (quoting *Yousif*, 796 F.3d at 625, 632).

A.R. at 6, 243–44.  Altogether, the IJ considered Marqus's evidence but decided that the Government's evidence was more persuasive.  *See* A.R. at 240–44.  Because Marqus's arguments merely ask us to reweigh the evidence, and the Government has introduced its own credible body of evidence to the contrary, we defer to the IJ's factual findings on this record.  We accordingly reject Marqus's factual challenges on this petition for review.

## B.  Legal Challenges to Denial of CAT Relief

Whether the BIA and the IJ applied the correct legal standard in deciding Marqus's CAT claim is a question of law that we review de novo.  *See Shabo*, 892 F.3d at 239–40.  "To obtain relief under [the] CAT, the applicant 'bears the burden of establishing it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(c)(2)) (internal quotation marks omitted).  To determine whether the applicant has met this burden, the BIA and the IJ must consider "all evidence relevant to the possibility of future torture."  8 C.F.R. § 1208.16(c)(3).

Marqus claims that the BIA and the IJ failed to conduct an aggregate analysis.  Other circuits interpret § 1208.16(c)(3) to require the BIA and the IJ to consider the aggregate probability of torture from independent sources or for independent reasons, rather than assess the probability of torture from each source or for each reason separately.  *See Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 972–73 (4th Cir. 2019); *Cole v. Holder*, 659 F.3d 762, 775 (9th Cir. 2011); *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015).  We will presume for the purposes of this analysis that the aggregation rule applies.  Under the aggregation rule, an applicant alleging probable torture from independent sources "need not demonstrate that the probability of torture by one of the entities," or for one of the reasons, "taken alone, exceeds 50%."  *Shakkuri v. Barr*, 780 F. App'x 286, 291 (6th Cir. 2019) (quotation omitted).  Instead, the question is whether the "'cumulative probability of torture by [all of the] entities," or for all reasons, "exceeds 50%.'"  *Id.* (quoting *Kamara v. Att'y Gen. of the U.S.*, 420 F.3d 202, 213–14 (3d Cir. 2005)); *Quijada-Aguilar*, 799 F.3d at 1308.  An improperly disaggregated analysis would, for example, first conclude that the applicant failed to demonstrate it was more likely than not that he would be tortured by rebel forces and secondly conclude that the applicant failed

to demonstrate it was more likely than not that he would be tortured by the government. *See Shakkuri*, 780 F. App'x at 291.

Nothing in the BIA's or the IJ's decisions suggests that they failed to consider Marqus's probability of torture in the aggregate. To the contrary, the BIA found that "the record does not reflect that the respondent is more likely than not to be tortured *by or with the acquiescence* of a public official in Iraq." A.R. at 7 (emphasis added). This conclusion captures conduct by both the Iraqi government and the PMF, which Marqus alleges pose independent threats. *See* Pet. Br. at 4; A.R. at 222–24. The IJ similarly concluded that Marqus "has not met his burden to prove that it is more likely than not that he will be tortured *by the Iraqi government or by forces that the Iraqi government acquiesces in, or turns a willful blind eye to*," the latter including the PMF. A.R. at 243 (emphasis added). The analysis would be disaggregated if the BIA or the IJ first concluded that Marqus could not demonstrate a probability of torture by the Iraqi government and, secondly, that he could not demonstrate a probability of torture by the PMF. Both courts properly combined the threats from each in deciding that Marqus did not demonstrate the requisite likelihood of torture. Therefore, the BIA and the IJ properly analyzed Marqus's probability of torture in the aggregate. *See Shakkuri*, 780 F. App'x at 291.

We note that Marqus additionally challenges the BIA's application of *In re J.F.F.* to his case. 23 I&N Dec. 912, 917 (BIA 2006)). In *In re J.F.F.*, the Attorney General stated that an applicant seeking deferral of removal under CAT must establish that each step in a hypothetical chain of events is "more likely than not to happen." 23 I&N at 917. There, the applicant claimed that he "needs medication in order to behave within the bounds of the law; that such medication is not available in the Dominican Republic; that as a result respondent would fail to control himself and become 'rowdy'; that this behavior would lead the police to incarcerate him; and that the police would torture him while he was incarcerated." *Id*. The Attorney General denied relief because the applicant failed to show that each of the individual links in the chain of events was more likely than not to occur. *Id*. at 918–20. "It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." *Id*. at 918 n.4.

Here, the BIA's decision to deny Marqus relief did not turn on an analysis of a hypothetical chain of events. Instead, the BIA decided that the IJ did not clearly err in finding that Marqus could not show a particularized threat of torture. *See* A.R. at 6. The BIA separately stated that the IJ did not err in finding Marqus's claim "too speculative" under *In re J.F.F.* because Marqus did not show that "each step in the hypothetical chain of future events claimed by [Marqus] is more likely than not to occur." A.R. at 6. It is not clear from the BIA's conclusory analysis which of Marqus's allegations purportedly amount to a hypothetical chain of events or why he has not shown that each link in the chain is more likely than not to occur. However, the BIA's application of *In re J.F.F.* was not necessary to its decision to deny relief. Marqus did not demonstrate a threat of torture personal to him from either the Iraqi government or the PMF, regardless of how he might come into contact with each. *See* A.R. at 6. The BIA upheld the IJ's finding that Marqus did not establish that the PMF "is currently interested in him or even knows who he is or that they would seek him if he returned to Iraq" or that "any persecutor or Iraqi official would specifically intend to inflict severe pain or suffering" upon him. *Id.* It is therefore unnecessary, in this case, for us to remand to the BIA to specify the hypothetical chain of events at issue and analyze it with the requisite level of detail. Accordingly, we deny Marqus's petition for review as to the proper legal standard under CAT.

## III. EXCLUSION OF EXPERT WITNESS

Next, Marqus challenges on due process grounds the exclusion of country-conditions expert Ms. Heller's declaration. Whether the BIA denied Marqus due process when it affirmed the IJ's decision not to admit Ms. Heller's expert declaration on country conditions in Iraq is a question of law that we review de novo. *See Singh v. Ashcroft*, 398 F.3d 396, 407 (6th Cir. 2005); *Shabo*, 892 F.3d at 240. "[R]eviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016). "Because 'proof of prejudice is necessary to establish a due process violation in an immigration hearing,' [] 'we need not address the merits of a [due process] claim if' the petitioner fails to demonstrate prejudice." *Id.* (quoting *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008)). "[T]o establish the requisite prejudice, [the petitioner] must show that the due process violations

led to a substantially different outcome from that which would have occurred in the absence of those violations." *Id.* at 297 (quoting *Graham*, 519 F.3d at 549–50).

Here, Marqus cannot demonstrate that the admission of Ms. Heller's expert declaration on country conditions would have led to a substantially different outcome. In addition to hearing testimony from Marqus and his family, the immigration judge heard expert testimony from Dr. Ramadan and accepted expert declarations by Mr. Smith and Mr. Lattimer. *See* A.R. at 221–32. Dr. Ramadan and Mr. Smith both gave accounts of current country conditions. Dr. Ramadan, a professor of Middle Eastern studies, *id.* at 359, testified that "[t]he Christians have remained a vulnerable community" and that "[t]he government of Iraq has been either unwilling or unable to provide them with adequate protection," including from groups like the PMF, *id.* at 370. He explained in detail how Christians have come to be a targeted community in Iraq and described the growing threat of militias. *See id.* at 373–79. He also stated that Marqus is particularly at risk of interrogation and torture in light of his criminal record and abandonment from the Iraqi military. *Id.* at 379–82.

Mr. Smith focused his declaration on interrogation and torture practices in Iraq, and how they are directed at religious minorities. He asserted that Marqus was at high risk of detention upon arrival in Iraq and would likely be tortured if he were transferred to a detention facility and interrogated. *Id.* at 499–503. He contended that Marqus faces a heightened threat of torture, compared to other minorities, because he is a male deportee with a criminal history. *Id.* at 497, 499. He came to his conclusions based on his "interviews, over the past decade, of government officials, security force officers and prison guards, militia members and leaders, as well as more than one hundred torture victims in Iraq; [his] firsthand observation of arrest, interrogation and torture by Iraqi security forces; and [his] review of reports of official use of torture." *Id.* at 497.

Ms. Heller's proffered declaration, on the other hand, provided a holistic account of vulnerable communities in Iraq and did not offer an opinion on Marqus's particular circumstances. *See id.* at 483–96. She touched on dangers facing women, LGBTI individuals, and ethnic and religious minorities (including Christians). *See id.* at 489–94. She stated that all Iraqis living in the U.S. are in danger of torture if deported to Iraq and that all religious minorities are vulnerable to threats from Iraqi militias. *See id.* at 490–91, 493–94.

To obtain CAT relief, Marqus must demonstrate a "*particularized* threat of torture." *See Bi Xia Qu v. Holder*, 618 F.3d 602, 610 (6th Cir. 2010) (quoting *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010)). Although evidence of torture of Chaldean Christians is sufficient to show a particularized threat, Ms. Heller's account does little to add to Dr. Ramadan's account of country conditions for Chaldean Christians. And, unlike Mr. Smith's declaration, Ms. Heller's declaration does not address other aspects of Marqus's history that increase his risk of torture, such as his criminal history. We therefore cannot say that the IJ's exclusion of Ms. Heller as an expert witness substantially affected the proceedings. This is not to suggest that Ms. Heller's account is unpersuasive, but rather that it was not fundamental to Marqus's case in view of the other experts' opinions on general country conditions and Marqus's particular susceptibility to detention, interrogation, and torture. Due process does not require consideration of Ms. Heller's declaration in this case.[3]

## IV. MOTION TO REMAND

Finally, Marqus challenges the BIA's denial of his motion to remand to consider new evidence. In particular, Marqus seeks consideration of the DOS 2017 Human Rights Report, the DOS 2017 Religious Freedom Report, and the new expert declaration by Ms. Wille. *See* Pet. Br. at 25. We review the BIA's denial of Marqus's motion to remand to consider new evidence for abuse of discretion. *See Ishac*, 775 F. App'x at 789. "The BIA abuses its discretion if its decision was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination.'" *Ishac*, 775 F. App'x at 789 (quoting *Ahmed v. Mukasey*, 519 F.3d 579, 585 (6th Cir. 2008)).

The relevant test for deciding a motion to remand for consideration of new evidence is whether the evidence is material and was previously unavailable. 8 C.F.R. § 1003.2(c)(1); *Shakkuri*, 780 F. App'x at 294. Although the BIA has broad discretion to deny a motion to remand, "once [the BIA] elects the ground(s) on which to base its ruling, the BIA needs to

---

[3]Marqus additionally argues that excluding Ms. Heller's expert declaration was arbitrary and capricious. Previously, we held that we lacked jurisdiction to review a similar claim involving the same expert, *see Shakkuri*, 780 F. App'x at 293–94, but after *Nasrallah*, there is no bar to our consideration of this type of claim. Nevertheless, we decline to address the merits of Marqus's arbitrary-and-capricious argument because it would not make a difference in Marqus's case.

analyze and explain the basis on which it decides against [the applicant]," meaning it must actually consider the evidence and the arguments put forth by the applicant. *Preçetaj v. Sessions*, 907 F.3d 453, 459 (6th Cir. 2018) (quoting *Lindor v. Holder*, 317 F. App'x 492, 499 (6th Cir. 2009)). "The Board must articulate ... for instance, why it determined that [the applicant's] evidence is not compelling or why the Government's evidence carries greater weight—particularly to allow for meaningful review by an appellate court." *Id*. "Cursory, summary, or conclusory statements are inadequate." *Daneshvar*, 355 F.3d at 626.

Where the BIA has cursorily denied a motion that would reopen an applicant's removal proceedings, we have remanded the case to the BIA to articulate a basis for its denial that would enable meaningful review by this court. *See, e.g.*, *Preçetaj*, 907 F.3d at 458–60; *Hanna v. Mukasey*, 290 F. App'x 867, 872–73 (6th Cir. 2008); *Ishac*, 775 F. App'x at 792–93. In *Preçetaj*, we remanded to the BIA to explain its rationale when it denied relief in a five-sentence single paragraph. 907 F.3d at 458–60. The first two sentences set out the applicant's request and listed the proffered evidence, and in the last sentence it simply stated that the motion to reopen is denied. *Id*. at 458. The BIA's "analysis [was] thus constrained to two sentences," in which it cursorily stated that the evidence did not reflect a material change in country conditions and that the evidence fails to establish eligibility for relief. *Id*. Likewise, in *Hanna*, we noted that "[t]he BIA's decision is contained within one page, indeed one paragraph," 290 F. App'x at 872, and "held that this sort of summary, conclusory decision is arbitrary." *Preçetaj*, 907 F.3d at 458 (citing *Hanna*, 290 F. App'x at 872–73). Finally, in *Ishac*, a Chaldean Christian applicant moved to reopen based on the new, 2017 State Department Report on conditions in Iraq. *Ishac*, 775 F. App'x at 793. In denying the motion, the BIA "fail[ed] to address the 2017 State Department Reports submitted, for the first time, in support of Ishac's motion for remand." *Id*. Again, the BIA summarily concluded that the evidence was insufficient, and again, we held that its conclusory decision was arbitrary. *Id*.

In this case, the BIA denied Marqus's motion to remand "with little more than a bald statement," *see Hanna*, 290 F. App'x at 873, that "the new evidence is insufficient to meet his burden of proof to establish his claim for deferral of removal," A.R. at 7. The BIA even recognized that "the new evidence [Marqus] presents on appeal might help with his argument

that Iraqi Christians or deportees without identification documents are at risk of detention and torture," but did not explain what about his claims, the new evidence, or the Government's evidence led to its decision to deny remand. *See id.* Unlike in *Preçetaj*, here the BIA did not even name the new evidence—let alone analyze why each piece of new evidence was either immaterial or previously unavailable. "State Department reports are generally the best gauge of conditions in foreign countries." *Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012). Yet the BIA neglected to address the conclusions in the DOS 2017 Human Rights Report that undermine some of the IJ's key findings as to country conditions. *See Ishac*, 775 F. App'x at 792–93 (finding abuse of discretion where the BIA denied remand to consider new evidence that "squarely addressed one of the IJ's primary reasons for denying Ishac's claims for relief"). In weighing the evidence for probability of torture, the IJ found it significant that, while there have been reports of the PMF targeting and torturing minorities, two of the Government's experts and the DOS 2016 Human Rights Report stated that the Iraqi government is investigating abuses by the PMF. A.R. at 242, 244. Over the course of the year, however, the results of some of those investigations have become public, and the DOS 2017 Human Rights Report concludes from those results that "[i]mpunity effectively existed for government officials and security force personnel, including the . . . PMF." *Id.* at 131–32. The remainder of the report recounts the many ways in which the PMF has continued to evade government oversight and accountability, including for unlawful detention and torture. *See id.* at 131–36, 148, 150. The DOS 2017 Religious Freedom Report further states that "Christians reported harassment and abuse at numerous checkpoints operated by Popular Mobilization Forces (PMF) units, impeding their movement in and around several Christian towns on the Ninewa Plain," *id.* at 107, whereas the DOS 2016 Religious Freedom Report did not include accounts of abuse of Christians by the PMF.

While it is not our place to conclude whether the new evidence materially changes Marqus's chances of obtaining CAT relief, it is clear to us that the new evidence, particularly the reports, could be significant to his case. Without a real analysis by the BIA of why this evidence is immaterial, we cannot at this stage determine whether the BIA abused its discretion in denying remand. We therefore remand to the BIA either to explain or to change its position on the new evidence.

## V. CONCLUSION

For the foregoing reasons, we **DENY** in part and **GRANT** in part the petition for review, and we **REMAND** to the Board of Immigration Appeals for proceedings consistent with this opinion.