**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0056n.06

Case No. 19-3134

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 27, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MOAIED SOLAKA, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ROBERT M. WILKINSON, Acting Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | **O P I N I O N** |
| | ) | |

BEFORE: GIBBONS, KETHLEDGE, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge.  An Immigration Judge (IJ) denied Moaied Solaka's request for deferral of removal under the Convention Against Torture (CAT), and the Board of Immigration Appeals (BIA) affirmed.  Solaka now petitions for review of that decision.  Because substantial evidence supported the BIA's decisions and the BIA committed no legal error, we deny his petition.

I. BACKGROUND

Moaied Solaka is an Iraqi citizen who has lived in the United States since 1998.  After he was convicted of assault with intent to do great bodily harm and several controlled substance offenses, an IJ ordered him removed to Iraq in 2011.  Six years later, he moved the immigration court to reopen his removal proceedings to consider his claim that he would be likely to suffer torture if returned to Iraq.  The IJ initially denied that motion, but the BIA reversed and remanded

for the IJ to consider Solaka's CAT claim. After reviewing substantial documentary evidence, analyzing several expert and fact-witness declarations, and hearing testimony from Solaka, the IJ determined that he had failed to show that he would more likely than not be tortured if returned to Iraq. As part of its decision, the IJ treated two of Solaka's proposed expert witnesses—Daniel Smith, a human rights researcher and journalist living in Iraq, and Rebecca Heller, a lawyer who litigates and trains others to litigate cases like these—as fact witnesses, although the IJ still thoroughly examined their declarations.

On appeal, the BIA held that the IJ acted within her discretion in declining to treat Heller and Smith as experts, and that even if that decision had been error it was harmless. It next concluded that the IJ's factual determination that Solaka failed to prove a sufficient likelihood of torture if returned to Iraq was not clearly erroneous. Finally, it rejected Solaka's motion to reopen based on allegedly new evidence because two of the pieces of evidence had been before the IJ, a new declaration from Smith could have been completed in time for the evidentiary hearing, and a new expert declaration offered information that was cumulative of other facts in the record. Solaka petitions for review of the BIA's decision.

## II. ANALYSIS

To receive CAT relief, Solaka had to prove that he faced a "particularized and likely threat of torture at the hands of a public official, or with the consent or acquiescence of a public official." *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020). Until last year, our precedent held that we could not review a factual challenge to the denial of CAT relief brought by someone who, like Solaka, is removable because he has a criminal conviction listed in 8 U.S.C. § 1252(a)(2)(C). *See id.* But the Supreme Court, in *Nasrallah v. Barr*, abrogated our past decisions and held that a CAT determination is not a final order of removal. 140 S. Ct. 1683, 1689 (2020). Thus, we can review

the BIA's factual determinations as well as its legal ones. *Marqus*, 968 F.3d at 588. To the extent that the BIA adopted the IJ's reasoning, we review the IJ decision as well. *Id.*

### A. Factual Challenge

"We review factual challenges to CAT orders under the highly deferential substantial-evidence standard, as the agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Abdulahad v. Barr*, --- F. App'x ----, 2020 WL 6940521, at *2 (6th Cir. Nov. 25, 2020) (quoting *Nasrallah*, 140 S. Ct. at 1692). Solaka argues that he meets that high standard.

Initially, like many petitioners who have come before us in the past five years, Solaka places great weight on our statement in *Yousif v. Lynch* that an Iraqi applicant's "status as a Christian alone entitles him to withholding of removal." 796 F.3d 622, 628 (6th Cir. 2015). As we have explained time and time again since we published that statement, *Yousif* did not "establish an entitlement to withholding of removal for all time" for Iraqi Chaldean Christians. *Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019); *Marqus*, 968 F.3d at 588 (quoting that language); *Abdulahad*, 2020 WL 6940521, at *6 (same).

So Solaka must prove that the BIA's factual determination was so incorrect that "any reasonable adjudicator" would have sided with him. *Nasrallah*, 140 S. Ct. at 1692 (citation omitted). Like the petitioner in *Marqus*, Solaka cannot show "that a reasonable adjudicator would be compelled to decide that [he] faces a high likelihood of torture based on his status as a Chaldean Christian, his ties to the United States, his criminal record, [and] his lack of identity documents." 968 F.3d at 588; *see also Abdulahad*, 2020 WL 6940521, at *8 (reviewing an effectively identical body of evidence to that presented here and reaching the same conclusion). As the BIA explained, "[t]he Immigration Judge evaluated profoundly mixed evidence of country conditions." Solaka

presented evidence that supported his claim that he faced torture. But the government presented expert declarations in response that characterized the views of Solaka's experts views as "farfetched" and "unsupported." Those government declarations described a country that is far from perfect, but where only those connected to ISIS or Saddam Hussein's Ba'athist regime are in danger. Thus, they provided substantial evidence to support the BIA's determination that Solaka's status as a Chaldean Christian and criminal who had spent a long time in America did not make it more likely than not that he would be tortured if returned to Iraq.

## B. Legal Challenges

### 1. The BIA's Legal Standard

First, Solaka argues that the BIA erred by "relying on" the Attorney General's decision in *Matter of J-F-F*, 23 I. & N. Dec. 912, 921 (A.G. 2006). But as we have explained before, the BIA's decision to cite that case once in support of the legal proposition that a petitioner must establish "each link in a hypothetical chain of events leading to torture as more likely than not to occur" does not show that it applied an incorrect legal standard. *Al-Koorwi v. Barr*, --- F. App'x ----, 2020 WL 6747439, at *5 (6th Cir. Nov. 17, 2020).

Second, he argues that the BIA improperly considered the risk from different sources of torture independently instead of in the aggregate. We have never held that the aggregation rule applies in this circuit, and we need not make that decision today because the BIA did aggregate its analysis. *See Marqus*, 968 F.3d at 589. As in *Marqus*, the IJ (as adopted by the BIA) concluded that it was "unable to find that respondent is more likely than not to be tortured by the Iraqi government or by forces that the Iraqi government acquiesces in, or turns a willful blind eye to." *See id.* (quoting almost identical language).

### 2. Due Process

Solaka next contends that the IJ's decision to treat Smith and Heller as fact witnesses instead of experts denied him due process of law. We review that question de novo, asking first whether there was a defect in the removal proceeding, then (if so) whether it prejudiced Solaka. *Marqus*, 968 F.3d at 590–91. If there was no prejudice, we need not resolve the first question. *Id.* at 591. To show prejudice, Solaka must show that treating Smith and Heller as experts, instead of fact witnesses, would have produced a "substantially different outcome." *Id.* (quoting *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016)).

The BIA determined that treating Smith and Heller as experts instead of fact witnesses would not have altered the IJ's conclusion. The IJ reviewed all of the facts that Smith and Heller presented in their declarations. Then it determined that the government's declarations better comported with the recent State Department reports than Solaka's declarations. As in other cases, Solaka does not explain how treating Heller and Smith as experts instead of fact witnesses would have affected his case. *See Al-Koorwi*, 2020 WL 6747439, at *6 ("And Al-Koorwi never 'even articulate[s] how Heller's and Smith's declarations—if given expert weight—would affect the result.'" (original alteration) (quoting *Faso v. Barr*, 823 F. App'x 321, 324 (6th Cir. 2020))). So he cannot meet his burden of showing that treating Smith and Heller as experts would have changed the outcome. *See id.* ("Besides, 'the Immigration Judge's decision not to certify Smith or Heller as expert witnesses did not exclude the evidence entirely; rather, the statements were considered by the Immigration Judge as fact witnesses.'" (quoting *Francis v. Barr*, 781 F. App'x 495, 500 (6th Cir. 2019))).

*3. Arbitrary and Capricious*

Solaka also argues that the BIA acted arbitrarily and capriciously by denying him relief while sustaining and remanding appeals filed by "similarly situated Iraqi Christians." The

government initially argues that we should not reach this issue because Solaka failed to exhaust it before the BIA. As it did for factual review, *Nasrallah* changed the landscape for issue exhaustion in the CAT context. Before *Nasrallah*, we had held that 8 U.S.C. § 1252(d)(1) precluded our jurisdiction over any issue that a petitioner failed to raise before the BIA. *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005). But like § 1252(a)(2)(C), § 1252(d)(1) applies only to final orders of removal. So *Nasrallah*'s holding that "[a] CAT order is distinct from a final order of removal and does not affect the validity of a final order of removal" likewise removes CAT claims from (d)(1)'s exhaustion requirement.[1] *See* 140 S. Ct. at 1694.

Acknowledging that likely conclusion, the government asks that we impose an exhaustion requirement all the same. Because such an exhaustion requirement would not be jurisdictional, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 745 (6th Cir. 2019), and because Solaka's claim fails on its merits, this is not an appropriate case to decide whether to do so.

Turning then to the merits, Solaka contends that the BIA acted arbitrarily and capriciously in upholding the IJ's decision not to treat Heller and Smith as experts when it reversed and remanded other IJs' similar decisions. He cites six redacted BIA decisions in support of his argument. If cases are materially identical, then the BIA's "failure to explain inconsistent outcomes may raise 'an inference of arbitrary decisionmaking.'" *Nissan v. Barr*, 788 F. App'x 365, 367 (6th Cir. 2019) (per curiam) (quoting *Ishac*, 775 F. App'x at 788). But these are not materially identical.

---

[1] In two CAT cases after *Nasrallah*, we have applied the § 1252(d)(1) exhaustion requirement. *Shafo v. Wilkinson*, No. 19-4143, at 5–6 (6th Cir. Jan. 25, 2021); *Al-Koorwi*, 2020 WL 6747439, at *4. But the petitioners in those cases did not raise the question whether that requirement continues to apply in CAT cases after *Nasrallah*, so we did not address it. *See Shafo*, slip op. at 6; *Al Koorwi*, 2020 WL 6747439 at *4–*5.

In three of those cases, the IJ failed altogether to explain why Smith and Heller were not experts. But here, the IJ explained that Smith did not qualify because his curriculum vitae did not disclose whether he was even a high-school graduate. And it explained that Heller did not qualify because she is a legal advocate in refugee proceedings, not an expert on the substantive conditions in Iraq. In another case, the BIA concluded that Smith and Heller's credentials were not qualitatively or considerably different from other individuals that the IJ deemed experts. Here, the government's experts consisted of a former Department of Defense specialist on Iraq and Iran who now works at a major think tank, the former director for Iraq at the National Security Council, and the director at the Center for Strategic Research at National Defense University, all of whom have PhDs. Those qualifications differ considerably from Smith and Heller's bases for claimed expertise. Finally, the sixth BIA decision pertains only to Smith, as the IJ had considered Heller an expert witness from the outset, and the BIA did not provide its reasoning as to Smith. Thus, it was not arbitrary and capricious for the BIA to affirm the IJ's decision to treat Smith and Heller as fact witnesses.

### III. MOTION TO REOPEN

Finally, Solaka argues that the BIA erred by declining to remand in light of purportedly new evidence that he submitted with his appeal. We review that decision for an abuse of discretion, remanding only if the BIA denied Solaka's motion "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Marqus*, 968 F.3d at 592 (quoting *Ishac*, 775 F. App'x at 789). The relevant established policy requires the BIA to remand if new evidence is material and was previously unavailable. 8 C.F.R. § 1003.2(c)(1).

Solaka identifies four pieces of evidence that he believes required remand. First, he points to the State Department's Human Rights Report on Iraq and the International Religious Freedom Report, both for 2017. But those reports were already in the record; indeed, the IJ explicitly considered them. So they added nothing to his case. Second, he points to Smith's updated expert declaration. That declaration only covered events up to May 2018, so the BIA concluded that it could have been presented at the initial hearing in August 2018. That determination was not an abuse of discretion. Third, he points to a new expert declaration from a researcher at Human Rights Watch. The BIA determined that it offered only cumulative evidence that was not likely to change the results of his case because the information that it presented on instances of torture by government officials was already in the 2017 Human Rights Report. Again, that was not an abuse of discretion.

## IV. CONCLUSION

For these reasons, we deny Solaka's petition for review.