NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0428n.06

Case No. 23-3020

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| GHANI HUSSEIN AL-AWAD, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, THAPAR, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Ghani Hussein Al-Awad petitions this court to review a final order of the Board of Immigration Appeals ("BIA") adopting and affirming an Immigration Judge's ("IJ") decision denying him deferral of removal under the Convention Against Torture ("CAT"). Al-Awad also asks us to review the BIA's denial of his motion to remand for consideration of new evidence. For the reasons below, we **DENY** Al-Awad's petition for review.

**I.**

Al-Awad is a native and citizen of Iraq. From 1982 until 1991, Al-Awad served in the Iraqi military in Saddam Hussein's regime. He deserted from the military during the First Gulf War before he was admitted to the United States as a refugee in 1996. In 2001, Al-Awad's status was adjusted to that of a lawful permanent resident of the United States.

The Department of Homeland Security commenced removal proceedings against Al-Awad in 2005. DHS initiated these proceedings after Al-Awad pleaded no contest to second-degree

criminal sexual conduct involving a child under thirteen in Michigan—a conviction for which he received a sentence of three years' probation. DHS alleged he was removable from the United States as a noncitizen convicted of an aggravated felony. The IJ ordered Al-Awad removed to Iraq in May 2005.

In 2017, Al-Awad successfully moved to reopen his removal proceedings based on changed country conditions in Iraq. In that motion, he sought withholding of removal under the Immigration and Nationality Act ("INA") and deferral of removal under the CAT, claiming he would be tortured and killed if he returned to Iraq. Through several hearings, the IJ heard testimony from Al-Awad and his childhood friend, Baker Albaaj, and received documentary evidence from both Al-Awad and DHS.

Al-Awad testified at length about his fear of torture by Iraqi forces if he returned to his home country. According to Al-Awad, his fears rested on his association with the United States, his desertion of the Iraqi military, his lack of valid Iraqi identification documents, and his criminal history. As he sees it, his status as a military deserter could subject him to death under Iraqi law. He testified, moreover, about his belief that Iraqi forces would imprison him if he returned because of his lack of identification and because of his criminal conviction.

Al-Awad also testified about his 2004 visit to Iraq when he returned home to visit his ailing mother. During that trip, he checked on a property he owned with his brothers. Al-Awad saw a fence around it with a sign from the Jaysh al-Mahdi militia that purported to prohibit entrance onto the property. Al-Awad allegedly attempted to get his property back, but one of his brothers told him it was risky to do so. Although he maintained that militia members watched him as he traveled through the country because they considered him an American spy, he conceded that the militia did not threaten him.

2

Albaaj testified that he and Al-Awad have been friends since childhood and about how they served in, and then deserted from, the Iraqi military together. He also testified about his numerous visits to Iraq. According to Albaaj, he has traveled to southern and central Iraq about ten times since 2003. From the experience gained through his visits, he testified that militias control most of the country and kidnap, torture, and kill anyone who criticizes their leaders. But other than allegedly being called a traitor for deserting the Iraqi military, Albaaj did not testify about suffering harm during his visits to Iraq. Finally, Albaaj testified about his belief that having family in Iraq can help returnees adjust to life there, and he confirmed that Al-Awad, a potential returnee, still has family in Iraq.

Al-Awad also submitted several documents to corroborate his claims before the IJ. He submitted the declarations of expert witnesses Mark Lattimer, Rebecca Heller, and Daniel Smith. And he also submitted, among other documents, a U.S. Department of State's Iraq Travel Advisory from January 2018, a letter from various Congresspersons to U.S. Secretary of Homeland Security, John F. Kelly, and other reports from news outlets and non-governmental human-rights organizations about the activities of the state-sponsored Popular Mobilization Forces ("PMF") in Iraq.

In opposition, DHS submitted declarations of its expert witnesses, Drs. Denise Natali, Michael Rubin, and Douglas Ollivant, as well as many supporting documents. Among these documents, DHS submitted nine news articles from 2017 and 2018 that discussed country conditions in Iraq. And DHS submitted a few of the U.S. Department of State's country reports on Iraq.

The IJ denied Al-Awad's application for withholding of removal under the INA and for deferral of removal under the CAT for three reasons. First, the IJ found that Al-Awad's sexual

3

conduct conviction was a particularly serious crime. As a result, the IJ held that the INA's particularly serious crime bar precluded the withholding of removal. Second, the IJ found that Al-Awad could not establish that he suffered past persecution or show a clear probability of future persecution even if the INA's bar did not apply. Third, finding that the DHS expert declarations were "more substantively persuasive" than Al-Awad's experts declarations, the IJ held that Al-Awad could not show that it is more likely than not that he will be tortured by or with the acquiescence of the Iraqi government. A.R. at 1311–14. The IJ therefore denied Al-Awad CAT relief.

On appeal to the BIA, Al-Awad challenged only the IJ's denial of his application for deferral of removal under the CAT. And during the pendency of that appeal, Al-Awad moved the BIA to remand the case to the IJ. The BIA denied Al-Awad's appeal, finding that the IJ did not clearly err by crediting the government's experts over Al-Awad's experts or by its decision concerning Al-Awad's risk of torture in Iraq. The BIA also denied Al-Awad's motion to remand.

**II.**

The BIA issued its own opinion, adopting much of the IJ's reasoning and adding some of its own. Under these circumstances, we review both the IJ's opinion and the BIA's additional reasoning. *Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013).

We review factual challenges to the BIA's denial of an application for CAT protection under the substantial-evidence standard, which is "highly deferential." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). The BIA's factual findings must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)); *Marqus v. Barr*, 968 F.3d 583, 588 (6th Cir. 2020).

We review the BIA's denial of a motion to remand for an abuse of discretion. *See Preçetaj v. Sessions*, 907 F.3d 453, 457 (6th Cir. 2018). "We will find an abuse of discretion if the [BIA's] denial 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). We consider questions of law de novo. *Marqus*, 968 F.3d at 589.

**III.**

In his petition for review, Al-Awad's arguments fall into two categories. His first set of arguments asks us to consider whether the BIA, in adopting and affirming the IJ's decision, erred in denying him CAT relief. More to the point, he argues the BIA and IJ erred by: (1) ignoring country reports and improperly weighing expert testimony; (2) concluding he failed to show he was more likely than not to be tortured on return to Iraq; and (3) failing to aggregate the risks he faces on return to Iraq. Al-Awad's second set of arguments relates to the BIA's denial of his motion to remand. He argues that the BIA misapplied the law and abused its discretion when it denied that motion. We consider these arguments in turn.

**A.      Challenges to the Denial of CAT Relief**

*Weight of the country reports and expert declarations*. Al-Awad contends that the BIA and IJ erred in their consideration of the evidence presented to them, specifically by ignoring country reports and improperly weighing expert declarations. Al-Awad asserts that this includes the BIA and IJ's reliance on DHS's expert declarations that are "bereft of citations" to the country reports. D. 13-1 at p.24. We disagree with Al-Awad's contention.

In general, any question about how the BIA and IJ "'considered, interpreted, and weighed the evidence presented' is a question of fact." *Marqus*, 968 F.3d at 588 (quoting *Shabo v. Sessions*,

892 F.3d 237, 239 (6th Cir. 2018), *overruled on other grounds by Nasrallah*, 140 S. Ct. at 1690–92). Still, "[f]actual errors can qualify as legal errors when 'important facts have been totally overlooked and others have been seriously mischaracterized.'" *Shabo*, 892 F.3d at 239–40 (citing *Ventura-Reyes v. Lynch*, 797 F.3d 348, 360 (6th Cir. 2015)) (emphasis omitted).

Al-Awad has not shown that the BIA and IJ overlooked or seriously mischaracterized the facts. The BIA and IJ applied the correct standards—the IJ, in its discretion, explained why it found the government's expert declarations "more substantively persuasive" than those of Al-Awad's A.R. at 1311–12, and the BIA reviewed the IJ's credibility findings under a "clearly erroneous" standard, *id.* at 3–4. The BIA and IJ accurately described Al-Awad's claims and offered detailed explanations for their decisions about Al-Awad's likelihood of torture. Moreover, the IJ thoroughly summarized Al-Awad's and Albaaj's testimony as well as the parties' expert declarations. Even if Al-Awad has established that the BIA and IJ did not "exhaustively analyze every individual piece of evidence and each individual subargument," that is "perfectly fine: 'the [BIA] need not list every possible positive and negative factor in its decision,' much less 'write an exegesis on every contention.'" *Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020) (quoting *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003)).

Having found no serious factual errors, we apply the highly deferential substantial-evidence test. That is, the BIA and IJ's reliance on DHS's experts and their findings related to Al-Awad's likely torture stands unless we are compelled to disagree. *Marqus*, 968 F.3d at 588 (citing *Kilic*, 965 F.3d at 473).

We look first to the BIA and IJ placing more weight on the government's experts than Al-Awad's experts. As we have previously explained, we will not reweigh the evidence. *See, e.g.*, *Marqus*, 968 F.3d at 589 (deferring to the IJ's factual findings when the petitioner "merely ask[s]

us to reweigh the evidence," and the government introduces "its own credible body of evidence to the contrary").

Even more to the point, there is substantial evidence in the record to support the BIA and IJ's finding that DHS's expert declarations were "more substantively persuasive" than Al-Awad's expert declarations. The IJ gave the following reasons as to why it made such a finding: (1) the DHS's experts had been deemed experts in the past; (2) they based their declarations on first-hand knowledge of, and experiences in, Iraq; (3) they recently visited Iraq for research purposes; and (4) their declarations were more strongly corroborated by available country reports than those of Al-Awad's experts. What is more, the IJ found that the country reports contradicted or otherwise did not corroborate the "broad conclusions" of Al-Awad's experts. A.R. at 1312. The BIA reviewed the IJ's determination on the experts at issue and found it was not clearly erroneous because whether declarations are sufficiently sourced and persuasive "is a matter for the weight the [IJ] gives the evidence." *Id.* at 4. The BIA is correct. *See Matter of J-G-T-*, 28 I. & N. Dec. 97, 101 (BIA 2020). And we cannot say that a reasonable adjudicator would reach the opposite conclusion. Accordingly, we reject Al-Awad's factual challenges to the weighing of the competing expert witnesses.

*Likelihood of torture*. We look next to the BIA and IJ's finding that Al-Awad did not meet his burden for CAT relief. Al-Awad argues that the IJ erred because he faces a high likelihood of torture based on his desertion from the Iraqi military, his criminal conviction, the violent history of Iraqi militia groups, and his lack of identification. We cannot say that the record before us would compel any reasonable adjudicator to find that Al-Awad probably will be tortured if he returns to Iraq.

The CAT bars removing an individual to a country where he probably will be tortured. *See Kilic*, 965 F.3d at 474. A noncitizen may seek a deferral of removal and will succeed if he establishes that "it is more likely than not that he . . . would be tortured" upon removal. 8 C.F.R. § 1208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment" that is "specifically intended to inflict severe physical or mental pain or suffering." *Id.* § 1208.18(a)(2), (a)(5). To qualify for protection, such torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1). Additionally, to attain relief, an individual must show more than just a "consistent pattern of gross, flagrant, or mass violations of human rights in a particular country." *In re S-V-*, 22 I. & N. Dec. 1306, 1313 (BIA 2000), *abrogated on other grounds by Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006). He must show that he faces a "particularized threat of torture." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003)). The BIA and IJ are required to consider all evidence relevant to possible future torture. *See* 8 C.F.R. § 1208.16(c)(3); *In re J-E-*, 23 I. & N. Dec. 291, 303 (BIA 2002); *Marqus*, 968 F.3d at 589.

Al-Awad points to evidence of human rights abuses by Iraqi official forces such as the PMF, which the BIA and IJ acknowledged. But Al-Awad failed to prove that Iraqi officials would target him for abuse. Take, for example, Al-Awad's claim that Iraqi officials will detain, re-prosecute, imprison, and torture him for his sexual conduct conviction. The BIA and IJ looked to a provision of the Iraqi Penal Code that states an individual will not be tried if a foreign court has already rendered a final judgment in their case and they have already served their full sentence. Al-Awad argues that this provision does not protect him because he never served a jail sentence. DHS's expert, Dr. Rubin, testified that although Iraqi officials will likely question returnees with

foreign criminal convictions, they lack the resources to prosecute such offenses as they are primarily concerned with those committing crimes within the country. Other than Albaaj's testimony that Iraq subjects those with foreign convictions to torture, Al-Awad offers no evidence that he faces a particularized threat of torture.

Much of Al-Awad's evidence, in fact, establishes only generalized violence and political unrest in Iraq. That is insufficient to warrant CAT relief. DHS's proof shows that Iraqi security forces, including the PMF, seek to obstruct the efforts of ISIS. And while there are credible reports of PMF committing human-rights violations in the war against ISIS, Drs. Natali, Rubin, and Ollivant testified that the PMF has faced increased accountability since the war ended. Al-Awad's two decades in the United States, according to Dr. Natali, would make it less likely for the PMF to suspect him of ISIS affiliation. DHS's experts further indicated that even if Iraqi officials detained Al-Awad, they would limit their questioning to determining whether Al-Awad is an ISIS sympathizer, a former senior member of Saddam Hussein's regime, or a deserter who fled during the Iraq War between 2003 and 2014. Al-Awad does not fit into any of those categories. Further, Al-Awad has family in Iraq, and DHS's evidence suggests this will assist him in safely relocating to his home country.

At bottom, the BIA and IJ considered Al-Awad's evidence but decided that DHS's evidence was more persuasive. Al-Awad asks us to reweigh the evidence. That we cannot do. We find that substantial evidence supported the BIA and IJ's findings.

*Probability of torture in the aggregate.* Al-Awad claims that the BIA and IJ failed to consider the aggregate probability he will face "torture from independent sources[.]" D. 13-1 at p.4. Such an analysis differs from an immigration court assessing "the probability of torture from each source or for each reason separately." *Marqus*, 968 F.3d at 589.

The "aggregation rule" requires immigration courts to consider the cumulative risk of torture to a CAT applicant. *Ibarra Chevez v. Garland*, 31 F.4th 279, 289 (6th Cir. 2022) (citing *Rodriquez-Arias v. Whitaker*, 915 F.3d 968, 973 (4th Cir. 2019)). "Under the aggregation rule, an applicant alleging probable torture from independent sources need not demonstrate that the probability of torture by one of the entities, or for one of the reasons, taken alone, exceeds 50%." *Id.* (quoting *Marqus*, 968 F.3d at 589). The question instead is "whether the cumulative probability of torture by all entities, or for all reasons, exceeds 50%." *Id.*

Our decision in *Marqus* is instructive. There, the BIA found that "the record does not reflect that the respondent is more likely than not to be tortured *by or with the acquiescence* of a public official in Iraq." *Marqus*, 968 F.3d at 589. Similarly, the IJ concluded that the CAT applicant, Marqus, had "'not met his burden to prove that it is more likely than not that he will be tortured by the *Iraqi government or by forces that the Iraqi government acquiesces in, or turns a willful blind eye to*,' the latter including the PMF." *Id.* Based on those findings, Marqus argued that the BIA and IJ failed to conduct an aggregate analysis. *Id.* We disagreed, holding that the BIA and IJ's "conclusion captures conduct by both the Iraqi government and the PMF, which Marqus alleges poses independent threats." *Id.* We further explained:

> The analysis would be disaggregated if the BIA or the IJ first concluded that Marqus could not demonstrate a probability of torture by the Iraqi government and, secondly, that he could not demonstrate a probability of torture by the PMF. Both courts properly combined the threats from each in deciding that Marqus did not demonstrate the requisite likelihood of torture. Therefore, the BIA and the IJ properly analyzed Marqus's probability of torture in the aggregate.

*Id.* at 589–90.

Like the immigration courts in *Marqus*, nothing here suggests the BIA or IJ failed to conduct an aggregate analysis. The BIA found "no clear error in the [IJ's] ultimate determination that [Al-Awad] has not established a likelihood of future torture by or with the acquiescence (to

include willful blindness) of an official of the government in Iraq if removed to that country." A.R. at 6. And the IJ held that: (1) Al-Awad could not show "that the Iraqi government acquiesces to or is willfully blind to conduct of the PMF"; (2) "the record shows that there is little particularized threat of torture to [Al-Awad], whether from the PMF or from other government agents"; and (3) Al-Awad had "not carried his burden of showing that it is more likely than not that he will be tortured by or with the acquiescence of the Iraqi government." *Id.* at 1312, 1314. These conclusions capture conduct by the Iraqi government, the PMF, and other militias throughout Iraq—entities that Al-Awad alleges pose him independent threats. This is not the type of disaggregated analysis *Marqus* proscribes. *See* 968 F.3d at 589. Instead, "[b]oth courts properly combined the threats from [all sources] in deciding that [Al-Awad] did not demonstrate the requisite likelihood of torture." *Id.* at 590. We therefore find that the BIA and IJ properly analyzed Al-Awad's probability of torture in the aggregate.

**B.     Motion to Remand**

Al-Awad argues that the BIA abused its discretion by denying his motion to remand. He contends that the BIA failed to address or even name his evidence and otherwise erroneously denied his motion. He also contends that the BIA "grossly mischaracterizes" a passage from the State Department's country reports. D. 13-1 at p.33. And he argues that the evidence he presented, if considered fairly, shows that conditions in Iraq have dramatically worsened since the IJ denied him CAT relief in July 2019.

Al-Awad moved to remand based on changed country conditions while his appeal was pending before the BIA. When this happens, the requirements for a motion to remand and those of a motion to reopen are the same for all practical purposes. *Matter of L-A-C-*, 26 I. & N. Dec. 516, 526 (BIA 2015); 8 C.F.R. §§ 1003.2(c), 1003.1(b)(3).

The BIA does not have to discuss all of the evidence before it when analyzing a motion to reopen. *See Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). Nor does it have to mention every logical element of a motion. *Id.* "Instead, we understand that there are 'at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought.'" *Id.* (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)). When the BIA "denies relief on a particular ground, we review only that ground." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249 (6th Cir. 2018).

We also note that the BIA has "broad discretion" to examine the evidence at issue on a motion to reopen. *Dieng v. Barr*, 947 F.3d 956, 961 (6th Cir. 2020) (quoting *Zhang v. Holder*, 702 F.3d 878, 882 (6th Cir. 2012)). Still, "cursory, summary, or conclusory statements" will not cut it. *Id.* (quoting *Lindor v. Holder*, 317 F. App'x 492, 498 (6th Cir. 2009)). The BIA must, at least, articulate "a basis to allow for meaningful appellate review." *Id.*

The BIA denied Al-Awad's motion on two grounds. First, it found he failed to introduce previously unavailable and material evidence. Second, it found that he failed to establish a prima facie case for CAT relief.

The BIA should not grant a motion to remand "unless the petitioner makes a prima facie showing that the statutory requirements for the underlying relief have been met." *Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986). As we explain below, the BIA allowed for meaningful review by explaining why Al-Awad cannot make a prima facie showing for CAT relief.

12

The BIA correctly noted that Al-Awad must support his motion to remand with evidence that demonstrates a "prima facie case that the applicant faces a clear probability of torture." A.R. at 6. "To present a prima facie case for relief, the movant need not make a 'conclusive showing' that [he] will ultimately obtain relief." *Trujillo Diaz*, 880 F.3d at 249 (quoting *Vata v. Gonzales*, 243 F. App'x 930, 947 (6th Cir. 2007)). Al-Awad needed to present evidence that "reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Id.* at 249–50 (quoting *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007)).

The BIA correctly articulated the requirements for CAT relief. And it considered Al-Awad's arguments for why he faced a particularized threat of torture in Iraq at the time of his motion: (1) he lacked identifying documents; (2) he has a criminal record; (3) he has spent significant time in the United States; (4) there are new human-rights violations at the hands of the Iraqi government and widespread anti-American animus since his merits hearing; (5) the political relationship between Iraq and the United States has changed; and (6) there are new procedures to attain Iraqi national identification or travel documents. It then acknowledged that the record "certainly reflects that there is ongoing violence in Iraq[.]" A.R. at 6. Still, it found that Al-Awad's evidence did not establish "a marked increase in the torture of individuals who have criminal records or have spent significant time in the United States." *Id.* And it noted that the 2021 country report for Iraq—one of the documents among the over 1,000 pages of evidence Al-Awad included with his motion—"provides that threats of violence against internally displaced persons and returnee populations are limited to those perceived to have been affiliated with [ISIS], which the respondent is not." *Id.* at 6–7. And it further explained that:

> [T]he evidence refers to general instability and the use of torture in a very general sense or in situations that do not apply to [Al-Awad]. Additionally, while some evidence points to atrocities committed against Shi'a Muslims in Iraq, [Al-Awad] concedes that these abuses were already evident when he had his hearing, thus it

13

> does not follow that these atrocities now establish a clear probability of torture. Overall, such evidence reflects a continuation of country conditions, rather than an increased particularized risk of torture to [Al-Awad].

*Id.* at 7 (internal citations omitted).

True enough, we have remanded cases to the BIA when it failed to demonstrate that it evaluated or analyzed the evidence before it. Take *Preçetaj* for example. In that case, the BIA provided a two-sentence analysis that did not address the movant's evidence and arguments concerning evidence specific to her. *Preçetaj*, 907 F.3d at 458. That is, the BIA did not address evidence that could have factored into the motion such as evidence about the murders of the movant's uncles or additional information about her family's political activities. *See id.* at 459. We reversed and remanded to the BIA to articulate a basis to allow for meaningful appellate review. *Id.* at 460.

Our decision in *Marqus* is also instructive. There, the BIA explained its denial of a motion to remand with no more than a "bald statement" that the new evidence was insufficient, and it did not consider any of the new material or previously unavailable evidence. *Marqus*, 968 F.3d at 593 (citation omitted). As such, we found the BIA's denial inadequate. *Id.* at 593–94.

But we have affirmed the BIA's denial of a motion to remand when a movant's general documents did not show changed country conditions would result in a risk of persecution against her. In *Zhang*, we considered a Chinese citizen's arguments that officials subjected her to persecution under China's population policy. 543 F.3d at 852. She pointed to a forced abortion at the hands of local officials after she became pregnant while unmarried as proof. *Id.* The BIA rejected the credibility of the individualized evidence she submitted with her motion to remand and denied her motion because she could not show she faced a risk of individual persecution. *Id.* at 854–55. On appeal, Zhang argued that the BIA abused its discretion "by failing to discuss the

numerous documents that she appended to her motion[,]" including "the State Department country reports or the testimony of China experts about the abuses related to the new family planning law." *Id.* at 854. We disagreed, explaining:

> The BIA's analysis of Zhang's general documents . . . was not necessary to its decision: she did not show that the changed conditions would result in a risk of persecution *against her*. Moreover, motions to reopen are disfavored in deportation proceedings because there is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their . . . cases. To remand here because the Board did not needlessly discuss documents on points of fact not material to its decision would frustrate this policy of finality in immigration proceedings without any benefit.

*Id.* at 855 (internal quotations and citations omitted).

This case is more like *Zhang* than *Preçetaj* or *Marqus*. The only individualized evidence Al-Awad offered in his removal proceedings was his own testimony and Albaaj's. He did not offer any other individualized evidence with his motion to remand. Like the movant in *Zhang*, Al-Awad offered hundreds of pages of documents that included generalized allegations of torture. That is not enough for Al-Awad to establish the "*particularized* threat of torture" required for him to obtain CAT relief. *See Vasquez-Padilla v. Lynch*, 657 F. App'x 414, 420 (6th Cir. 2016) (quoting *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010)). "Generalized allegations of torture, without more, do not compel the finding that it is more likely than not that [Al-Awad] would be tortured upon removal to [Iraq]." *Id.* The BIA relied on this authority in denying Al-Awad's motion to remand. We cannot find, and Al-Awad has not identified, any evidence in the record that shows *he* faces a particularized risk of torture in Iraq. Like we held in *Zhang*, remanding here because the BIA did not needlessly discuss immaterial documents would frustrate the policy of finality in immigration proceedings without any benefit. *See* 543 F.3d at 855.

15

Finally, Al-Awad points to a September 2020 decision ("*Hamana*") by the same IJ who denied him CAT relief to argue he is entitled to remand. The IJ reviewed the same evidence Al-Awad presented to justify granting CAT relief to another Iraqi applicant. We decline to consider *Hamana* because it is extra-record evidence. 8 U.S.C. § 1252(b)(4)(A) (judicial review is limited to the administrative record); *Bejjani v. INS*, 271 F.3d 670, 676 (6th Cir. 2001) ("[T]his Court is prohibited from considering facts not in the administrative record."), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Further, Al-Awad must exhaust his claims before the BIA to raise them here. 8 U.S.C. § 1252(d)(1). The dates of the relevant decisions indicate that he could have presented *Hamana* and his related arguments to the BIA, but he has not offered any explanation for not doing so.

The BIA did not abuse its discretion when it denied Al-Awad's motion to remand.

**IV.**

For the foregoing reasons, we **DENY** Al-Awad's petition for review.