**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0748n.06
Filed: December 8, 2008

No. 07-3157

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SILVANA MARDUSHA, | ) | |
| | ) | |
| **Petitioner,** | ) | **ON PETITION** FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MICHAEL B. MUKASEY, United | ) | |
| States Attorney General, | ) | |
| | ) | **O P I N I O N** |
| **Respondent.** | ) | |
| _____ | ) | |

Before: MERRITT, MOORE, and COLE, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Petitioner, Silvana Mardusha ("Mardusha"),

seeks review of the order of the Board of Immigration Appeals ("BIA") that affirmed the

immigration judge's ("IJ") decision to deny Mardusha's petition for asylum and withholding of

removal. Mardusha argues that the IJ's determination that Mardusha had not made a sufficient

showing to establish her date of entry deprived Mardusha of her right to due process. Mardusha also

asserts that the BIA abused its discretion when it affirmed the IJ's decision to deny Mardusha asylum

and withholding of removal on the grounds that Mardusha was not credible. For the reasons

discussed below, we **DENY** the petition for review of the BIA's order denying Mardusha asylum and

withholding of removal.

# I. BACKGROUND

Mardusha is an Albanian citizen who was born in Shkoder, Albania in 1974. Joint Appendix ("J.A.") at 125 (App. for Asylum at 1). Mardusha is single and has two children who were born in the United States and who are United States citizens. J.A. at 126-27 (App. for Asylum at 2-3). In Albania, Mardusha was a member of the Democratic Party ("DP") and worked as the host of a children's television program. J.A. at 130 (App. for Asylum at 6). Mardusha asserts that because of her visibility and political affiliation, she was persecuted by the Albanian police. *Id.*

At her merits hearing before the IJ, Mardusha testified that she and her family first became involved in the democratic movement in Albania in 1990. J.A. at 79 (Hr'g Tr. at 26). Mardusha explained that she officially became a member of the DP after she participated in a demonstration on April 2, 1991. J.A. at 80 (Hr'g Tr. at 27). The first major event that Mardusha described at her hearing was the death of her uncle. J.A. at 80-82 (Hr'g Tr. at 27-29). Mardusha testified that in November of 1999, her uncle broke up a fight between his wife and the wife of a police officer. *Id.* Mardusha explained that the police officer's wife called her husband and that, in response, the police came to Mardusha's uncle's house and shot him inside his home[1] in front of his family. *Id.* Mardusha was not present when her uncle was killed, but Mardusha stated that her aunt witnessed the shooting and told Mardusha what had happened. *Id.*

Around the time of her uncle's death, Mardusha started to have difficulties with the police. Mardusha testified that in 1998 when she began appearing on television, a police officer approached

---

[1]Mardusha submitted a newspaper article regarding her uncle's murder which stated that he was shot in his front yard, not while he was inside his home as Mardusha testified. J.A. at 117 (Hr'g Tr. at 66). When the IJ noted this difference, Mardusha explained that the article had misreported that detail but that she had submitted the article despite the error because it highlighted the importance and political nature of her uncle's murder. J.A. at 117-18 (Hr'g Tr. at 66-67).

her as a fan of her show. J.A. at 115 (Hr'g Tr. at 64). Mardusha explained that this police officer began to stalk her and to threaten her and her friends. J.A. at 92-93 (Hr'g Tr. at 41-42). Mardusha told the IJ that the problems with her stalker intensified after her uncle died because she continued to question publicly the circumstances surrounding her uncle's death. J.A. at 113-14 (Hr'g Tr. at 62-63). Mardusha stated that shortly after her uncle's death, also in November 1999, the police detained her. J.A. at 89 (Hr'g Tr. at 38). The police threatened Mardusha during this time, and the officer who had been stalking Mardusha was present. *Id.*

After her uncle's death, Mardusha's stalker and other police officers continued to follow her. J.A. at 90 (Hr'g Tr. at 39). This police harassment culminated in Mardusha's kidnapping in December 2000. J.A. at 90-91 (Hr'g Tr. at 39-40). Mardusha testified that as she was walking home, some men grabbed her, threw her into a van, tied her up, and brought her to a house. *Id.* According to Mardusha's hearing testimony, the police officer who had been stalking her arrived at this house, removed her clothing, punched her, and did "what he wanted to do for a long time."[2] *Id.* Mardusha was later able to escape and return home. J.A. at 92 (Hr'g Tr. at 41).

Mardusha testified that after this kidnapping and assault she went into hiding, but the police were still able to find and follow her. J.A. at 93-94 (Hr'g Tr. at 42-43). As a result of this on-going persecution, Mardusha decided to leave Albania. Mardusha's parents paid a man who got Mardusha a fake passport and accompanied her to America. J.A. at 94-95 (Hr'g Tr. at 43-44). Mardusha testified that she arrived in America on January 5, 2001, but that she had no paperwork to prove this

[2]As the IJ noted, in the statement that Mardusha submitted with her application for asylum, Mardusha mentioned the December 2000 kidnapping but stated that she had been kidnapped by "some unknown men" and did not note the presence of the officer who had been stalking her. J.A. at 39-40 (IJ Decision at 17-18); *see also* J.A. at 158 (Mardusha Stmt. at 2).

because the man who brought her into America had kept all of the documentation. J.A. at 95-101 (Hr'g Tr. at 44-50).

Mardusha filed an application for asylum and withholding of removal in November 2001. J.A. at 146 (App. for Asylum at 1). On January 22, 2002, the Immigration and Naturalization Service issued a Notice to Appear ("NTA") charging Mardusha with removability under 8 U.S.C. § 1182(a)(6)(A)(i). J.A. at 244 (NTA at 1). On October 8, 2003, Mardusha and her counsel appeared before an IJ, and Mardusha conceded removability. J.A. at 62-63 (2003 Hr'g Tr. at 11-12). Mardusha's merits hearing was held on July 11, 2005. Mardusha testified to the events described above, submitted corroborating documents, and asserted that she feared she would be killed if she returned to Albania. J.A. at 95 (Hr'g Tr. at 44).

The IJ issued an oral decision denying Mardusha asylum and withholding of removal. The IJ first found that Mardusha "has not satisfied the requirement of showing by clear and convincing evidence that her application for asylum was made within one year of her last arrival." J.A. at 25 (IJ Decision at 3). Though the IJ concluded that Mardusha's application for asylum was untimely, the IJ went on to consider Mardusha's testimony. The IJ found Mardusha not credible based on the following inconsistencies:

- Mardusha testified that her uncle was killed inside his home while the newspaper article she submitted stated that he was killed outside. Accounts of the dispute that led to the killing also differed. J.A. at 37-38 (IJ Decision at 15-16).

- Mardusha submitted a document from a DP leader which failed to mention her detention after the April 1991 rally. J.A. at 38-39 (IJ Decision at 16-17).

- Mardusha's application for asylum had included the 2000 kidnapping, but it did not state that the officer who had been stalking her was present at the kidnapping or that he had raped her. She testified for the first time at the hearing that her stalker participated in her kidnapping. J.A. at 39-40 (IJ Decision at 17-18).

4

The IJ also noted that Mardusha had not submitted much credible corroborating material and that she had not submitted material that was available to her that would have corroborated her testimony. J.A. at 40-43 (IJ Decision at 18-21). Mardusha had not, for example, submitted affidavits from her family members to corroborate her date of entry or her kidnapping even though some of her relatives lived in America or had provided affidavits attesting to other information. *Id.* The IJ also found that Mardusha had not alleged sufficiently that the events she described, such as her kidnapping and her uncle's death, were politically motivated, and that therefore, she had not "established that she is entitled to" asylum or to withholding of removal under the Immigration and Nationality Act ("INA"). J.A. at 42-46 (IJ Decision at 20-24). The IJ finally concluded that Mardusha did not qualify for withholding of removal under the Convention Against Torture ("CAT") because she had not shown that the government of Albania either directed or acquiesced in the events she described and hence she could not establish that it was likely that she would be tortured by the government if she returned to Albania. J.A. at 46 (IJ Decision at 24).

Mardusha appealed the IJ's decision to the BIA. Mardusha argued that she had met her burden of establishing her date of entry because the government included the date of entry from her application for asylum in its NTA, and she conceded removability based on this document. J.A. at 11-12 (Mardusha BIA Br. at 4-5). Mardusha next suggested that the IJ had not made a specific finding that Mardusha was not credible and that any implications that Mardusha was not credible were not due deference. J.A. at 12-14 (Mardusha BIA Br. at 5-7). Mardusha also asserted that she had suffered persecution and that she had shown that this persecution was politically motivated. J.A. at 14-15 (Mardusha BIA Br. at 7-8).

On January 31, 2007, the BIA dismissed Mardusha's appeal and upheld the IJ's denial of asylum and withholding of removal. J.A. at 2-4 (BIA Order at 1-3). The BIA noted that although the NTA contained a date of entry, the government contested this date at the hearing, and Mardusha failed to provide any evidence to support this date. J.A. at 3 (BIA Order at 2). The BIA concluded that there was "no reason to disturb the [IJ's] decision denying [Mardusha's] application for asylum as untimely." *Id.* The BIA also concluded that the IJ's determination that Mardusha was not credible was supported by the record and that the IJ had "provide[d] specific and cogent reasons" for finding that Mardusha was not credible. *Id.* The BIA specifically noted that Mardusha's testimony that her uncle was killed inside his home was contradicted by a newspaper article that Mardusha submitted that stated that her uncle had been killed in his front yard. *Id.* The BIA also highlighted the fact that Mardusha's application for asylum had not stated that her stalker was present at her kidnapping or that he had raped her. J.A. at 4 (BIA Order at 3). The BIA concluded that there was no reason "to disturb the [IJ's] denial of [Mardusha's] application" for withholding of removal under the INA[3] and dismissed Mardusha's appeal. *Id.*

Mardusha now petitions us for review under 8 U.S.C. § 1252. First, Mardusha asserts that the IJ's decision to dismiss Mardusha's application for asylum as untimely deprived Mardusha of her right to due process. Mardusha Br. at 5, 7-8. Mardusha suggests that the IJ acted with "extreme prejudice" throughout the hearing and that the IJ's conclusions are not, therefore, due our deference. *Id.* at 9-12. Mardusha further argues that she has shown past persecution and that the IJ and the BIA

---

[3]The BIA did not discuss withholding of removal under the CAT because it found that Mardusha did "not articulate any arguments disputing" the IJ's denial of her application for CAT protection. J.A. at 2 (BIA Order at 1 n.1).

abused their discretion when they denied Mardusha's petitions for asylum and withholding of removal. *Id.* at 12-16.

## II. ANALYSIS

### A. Standard of Review

"When the BIA does 'not summarily affirm or adopt the IJ's reasoning and provide[s] an explanation for its decision, we review the BIA's decision as the final agency determination.'" *Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2008) (quoting *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007). "We review factual findings under the substantial evidence standard." *Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir. 2008) (internal quotation marks omitted). This standard of review requires us to take findings of fact as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 672-73 (internal quotation marks omitted).

### B. Timeliness of Asylum Claim

The legal standards governing applications for asylum are laid out in 8 U.S.C. § 1158. An alien cannot apply for asylum under this section "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States."[4] § 1158(a)(2)(B). This statute states that "[n]o court shall have jurisdiction to review any determination of the Attorney General" that a given individual's application for asylum is untimely. § 1158(a)(3). After the passage of the REAL ID Act in 2005,

---

[4]Section 1158(a)(2)(D) provides that an individual can apply for asylum after this one-year period if the individual can show changed or extraordinary circumstances. Mardusha contends that she sufficiently proved that her date of entry was less than a year before she filed for asylum, and she does not argue that either of the exceptions in § 1158(a)(2)(D) apply to her case.

we concluded that § 1158(a)(3) "bar[s] our review of asylum applications denied for untimeliness only when the appeal seeks review of the discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory interpretation." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006); *see also* 8 U.S.C. § 1252(a)(2)(D).

Mardusha's brief seems to argue that the IJ's timeliness determination violated Mardusha's due-process rights because the IJ was prejudiced. Mardusha Br. at 2, 7-9. However, Mardusha failed to raise before the BIA the argument that the IJ was prejudiced. J.A. at 11-12 (Mardusha BIA Br. at 4-5). Therefore, any constitutional arguments that Mardusha makes are unexhausted, and we cannot consider them. *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) ("[W]e hold that only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal."). Additionally, Mardusha's brief contains only limited argument on this point and does not present any evidence of the alleged prejudice. To the extent that this argument seeks review of factual questions, we lack jurisdiction to consider it. Because Mardusha has waived and failed to support any constitutional claim, we do not have jurisdiction to consider the IJ's and the BIA's factual determination that Mardusha's petition for asylum was untimely.

## C. Asylum Claim

Even if Mardusha's claim that the IJ's finding that Mardusha had not met her burden of proving that her application was timely were successful, Mardusha cannot prevail on her claim that she should be granted asylum. An applicant for asylum must prove that he or she cannot return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Ndrecaj*, 522 F.3d at 674. After an applicant makes this showing, the IJ has

8

the discretion to grant or deny asylum. *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007). If the IJ or BIA finds an applicant's testimony credible, an applicant can rely solely on his or her own testimony to establish past persecution or a well-founded fear of persecution. *Ndrecaj*, 522 F.3d at 674; 8 U.S.C. § 1158(b)(1)(B)(ii). The IJ must support an adverse credibility finding with specific reasons "based on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 925-26 (6th Cir. 2004). We review credibility determinations under the deferential substantial-evidence standard. *Id.* As the IJ's credibility determination is a finding of fact, we cannot overturn it unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Ndrecaj*, 522 F.3d at 672-73 (internal quotation marks omitted).

In Mardusha's case, we cannot say that we are compelled to conclude that the IJ and the BIA erred in their determinations that Mardusha was not credible. Both the IJ and the BIA made specific findings of the inconsistencies that led them to conclude that Mardusha was not credible. The two inconsistencies that the BIA noted are related to the two major incidents that Mardusha described: her uncle's death and her own kidnapping. Because the IJ and BIA identified some discrepancies that go to the heart of Mardusha's application for asylum, we hold that there is "not sufficient evidence to compel a finding of credibility, which is the standard for reversal by this Court." *Sall v. Gonzales*, 251 F. App'x 337, 341 (6th Cir. 2007).

## D. Withholding of Removal Claim

Mardusha also apparently seeks review of the IJ's and BIA's decision to deny her withholding of removal under the INA.[5] In order to qualify for withholding of removal under the

---

[5]We do not consider the availability of withholding of removal under the CAT because the BIA found that Mardusha did "not articulate any arguments disputing" the IJ's denial of CAT protection. J.A. at 2 (BIA Order at 1 n.1). Mardusha's claims under CAT are, therefore,

INA, "an alien must show that there is a clear probability, that is, that it is more likely than not, that she would be subject to persecution on the basis of [race, religion, nationality, membership in a particular social group, or political opinion] were she removed from the country." *Almuhtaseb*, 453 F.3d at 749 (internal quotation marks omitted). This substantive qualification standard for withholding of removal under the INA is more stringent than the one applied to claims for asylum. Therefore, because Mardusha is not eligible for asylum, it necessarily follows that she is not eligible for withholding of removal under the INA. *Ndrecaj*, 522 F.3d at 677.

We must "uphold the BIA's determination against withholding the removal of an alien, unless it is manifestly contrary to the law. Furthermore, any administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ndrecaj*, 522 F.3d at 677 (internal quotation marks omitted). As discussed above, because the IJ described inconsistencies that go to the heart of Mardusha's claims, we cannot say that denial of withholding of removal under the INA is manifestly contrary to law. Given this deferential standard of review, we must deny Mardusha's petition for review of the BIA's decision to deny withholding of removal.

## III. CONCLUSION

For the foregoing reasons, we **DENY** Mardusha's petition seeking review of the BIA's denial of her application for asylum and withholding of removal under the INA.

---

unexhausted, and we cannot consider them. *Ramani*, 378 F.3d at 560.