NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0479n.06

No. 24-3867

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MD. SUNDOR ALI, et al.,

    Petitioners,

v.

PAMELA BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

FILED
Oct 20, 2025
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW OF
A DECISION OF THE BOARD
OF IMMIGRATION APPEALS

OPINION

Before: SUTTON, Chief Judge; CLAY and GIBBONS, Circuit Judges.

**CLAY, Circuit Judge.** Petitioners, all native citizens of Bangladesh, applied for asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231(b)(3), and protection from removal under the Convention Against Torture. An immigration judge denied Petitioners' application after finding that Petitioner Md. Sundor Ali provided non-credible testimony at his hearing. The Board of Immigration Appeals affirmed the immigration judge and issued a final removal order. Petitioners now seek review of the Board's decision. Because we find that the IJ's adverse credibility determination was appropriate, we **DENY** the petition for review.

## I. BACKGROUND

Petitioners Md. Sundor Ali, Farjana Hasan Mili, and their two small children are citizens of Bangladesh who immigrated to the United States in September of 2022. That same month, the Department of Homeland Security served Petitioners with Notices to Appear, charging them as

subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as aliens present in the United States without having been admitted or paroled after inspection.

On March 13, 2023, Mr. Ali filed an I-589 Application for Asylum, listing his wife and children as derivative beneficiaries. In addition to asylum, he indicated that he was seeking protection from deportation under the Convention Against Torture ("CAT"), stating that he had been "threatened several times" by the ruling political party in Bangladesh, the Awami League, due to his "active membership in the Liberal Democratic Party of Bangladesh," an opposition group. Admin. Rec., ECF No. 9-4, 77. He reported that members of the Awami League had previously "beat [him] to the point of losing consciousness" and threatened his family members. *Id.* He also stated his belief that, if he returned to Bangladesh, the Awami League would attack him, and the police would arrest him if he reported the attacks.

### 1. Hearing Before the Immigration Judge

Petitioners were originally scheduled to have their merits hearing on September 29, 2023. But at that hearing, they sought to admit several pieces of new evidence, including a newspaper article and hospital discharge papers that related to alleged attacks Mr. Ali suffered at the hands of the Awami League. The immigration judge admitted the evidence to give Mr. Ali "the opportunity for…a full and fair hearing," but continued the hearing so that the government would have time to review the new evidence. Admin. Rec., ECF No. 9-3, 18.

The parties convened on January 12, 2024, for Petitioners' rescheduled hearing. Petitioners offered several pieces of documentary evidence in support of the petition, including: (1) a personal statement in which Mr. Ali recounted the persecution he allegedly suffered from the Awami League; (2) a newspaper article about an attack that Mr. Ali allegedly experienced in February 2022; (3) medical records indicating that Mr. Ali had been hospitalized following that alleged

attack; and (4) several governmental reports and scholarly articles describing the political conditions in Bangladesh.

At the hearing, Mr. Ali testified that he feared persecution from members of the Awami League due to his Liberal Democratic Party ("LDP") membership. He stated that, starting in 2019, Awami League members—and in particular its chairman Hiron Mia—repeatedly threatened and harassed him in an effort to make him leave the LDP and join the Awami League.

Mr. Ali testified that he suffered two attacks at the hands of Awami League members due to his LDP participation. Cross examination revealed several inconsistencies in his stories about the attacks. The first alleged attack occurred on December 15, 2021, in a local marketplace when six members of the Awami League approached and began kicking and punching Mr. Ali.

During cross examination, Mr. Ali testified that Hiron Mia was not present at this attack. This contradicted Mr. Ali's submitted personal statement, which said that Mr. Mia *was* present. When asked to explain the inconsistency, Mr. Ali indicated that he did not understand the question and asked for clarification on the government's line of questioning several times before eventually stating that he "made a mistake" in his testimony and had forgotten that Mr. Mia was there. Admin. Rec., ECF No. 9-3, 83–90.

During the government's cross about this inconsistency, Mr. Ali's counsel interjected, stating: "[A]t this point, I think it's obvious my client is suffering from sleep deprivation because he's barely keeping his eyes open." *Id.* at 91. Counsel clarified that she was not asking for a continuance, but wanted it noted that his alleged sleep deprivation was "probably affecting his memory." *Id.* The IJ responded: "[I]f we're putting that on the record, I have to say the court's observation" is that "[h]e has not been responsive to these questions and slow to respond, but he's sitting and appears to be awake." *Id.*

- 3 -

The second alleged attack occurred on February 21, 2022, when ten of Mr. Mia's "people" beat Mr. Ali with hockey and bamboo sticks due to his continued participation in the LDP. *Id.* at 52–53. According to Mr. Ali, he lost consciousness during the beating and awoke in a hospital. Mr. Ali again testified that Mr. Mia was not present at this attack, which again contradicted his personal statement. When pressed about this inconsistency, Mr. Ali stated that the attack happened at Mr. Mia's "commandment," but that Mr. Mia was not present. *Id.* at 96. He also stated that when he tried to report the beating to the police, they refused to accept a complaint against the Awami League and threatened to put him in jail if he tried to make another report. During this line of questioning, Mr. Ali repeatedly said he didn't understand the questions and asked for clarification.

Mr. Ali also discussed the newspaper article that he submitted in support of his narrative of the February attack. Mr. Ali said that the story came to be published after his coworker "let the newspaper know" about that the attack. *Id.* at 101. He stated that the coworker was interviewed by the newspaper for the story. When asked why the newspaper article said that Mr. Mia was present at the attack, in contradiction of Mr. Ali's testimony, Mr. Ali repeated that the "incident happened by command of him." *Id.*

On re-direct at a hearing held on March 27, 2024, Mr. Ali's counsel asked him several questions that related to his contradictory testimony about the February attack. He testified that although his Bengali personal statement was accurate, there was an "issue" with the English-translated version of the statement. *Id.* at 120. Specifically, he claimed that the Bengali version said that he was attacked by *order* of Hiron Mia, but the English version incorrectly stated that Mr. Mia was present at the attack. He testified that he noticed this mistake when he "went home" and "reviewed the Bengali one." *Id.* at 126.

The government objected to the foundation for this line of testimony because the personal statement said that it was written down in English by a translator from Mr. Ali's *verbal* statements made in Bengali. The government inquired how there could be a "correct" Bengali statement when the translated version indicated that there had never been a written Bengali statement in the first place. In response, Mr. Ali said: "When I went home, I found a document that was in Bengali," but offered no additional explanation. *Id.* at 128.

Mr. Ali also recounted how, on March 17, 2022, Hiron Mia went to his in-law's home, threatened his wife and children, and attacked his in-laws. Although Mr. Ali testified on direct examination that Mr. Mia had attacked *both* his father-in-law and his mother-in-law, on cross he stated that his father-in-law had passed away, so Mr. Mia only attacked his mother-in-law.

Mr. Ali claimed that he had been an active member of the LDP since 2018, but on cross examination, he was unable to accurately answer some of the government's questions about the party. When asked how many people belonged to the LDP in his native region of Sylhet, Mr. Ali said, "close to 2 million." *Id.* at 74. He also stated that the LDP was the main opposition party to the Awami League. However, the country reports submitted by Petitioners stated that the Bangladesh National Party (BNP) was actually the largest opposition party and estimated that LDP membership was less than 5,000 total. During redirect examination, Mr. Ali stated that he "didn't quite understand" and that he made a mistake when he said that LDP was the main opposition party.

### 2. Immigration Judge's Denial of Petitioners' Application

After testimony concluded, the IJ told Mr. Ali that he was "concerned that [Mr. Ali was] not telling…the truth" and gave him the opportunity to correct any false testimony. *Id.* at 129. Mr. Ali said that he had provided no false testimony. During closing statements, Mr. Ali's counsel

emphasized that Mr. Ali was "his own worst enemy" due to his nervousness and described him as a "hopeless" witness. Admin. Rec., ECF No. 9-4, 2–3. According to counsel, his testimony was true, just presented poorly. The government's closing statement emphasized its position that Mr. Ali had "submitted a frivolous asylum application." *Id.* at 4.

The IJ denied Petitioners' application for asylum, withholding of removal, and protection under the Convention Against Torture. He noted that, if he had found Mr. Ali's claims of persecution credible, Petitioners would have alleged a plausible claim for asylum. However, the IJ determined that Mr. Ali's demeanor was "evasive" and his account lacked credibility due to its systemic inconsistencies. Admin. Rec., ECF No. 9-2, 102. The IJ was particularly concerned about Mr. Ali's claim that he consulted a written Bengali version of his personal statement when the English translation stated that it had been translated from Mr. Ali's verbal statements. The IJ highlighted Mr. Ali's inconsistent statements regarding Hiron Mia's presence at his alleged assaults and whether his father-in-law had been attacked. The IJ also determined that Mr. Ali's testimony "caused great question about his knowledge or participation at all in the LDP" due to the factual inaccuracies about the party. *Id.* at 103.

### 3. Appeal to the Board of Immigration Appeals

Petitioners appealed the IJ's denial of their application to the Board of Immigration Appeals ("Board") arguing that the IJ committed clear error by giving too much weight to the inconsistencies in Mr. Ali's testimony and ignoring other consistent and credible evidence. They claimed that Mr. Ali's forgetfulness was caused by sleep deprivation. Petitioners also argued that the IJ should have "at a minimum" granted their request for CAT relief because an adverse credibility finding on an asylum claim does not automatically compel a CAT denial. *Id.* at 25.

They indicated that the country reports and scholarly articles they submitted were sufficient grounds to grant CAT relief.

On September 6, 2024, the Board affirmed the IJ's decision and issued a final order of removal. The Board determined that Mr. Ali had not "persuasively explained or rebutted the identified inconsistencies or issues relating to his demeanor" or "disputed the presence of the identified inconsistencies" in his testimony. *Id.* at 4. Noting that the IJ's adverse credibility determination was based on "the totality of the circumstances," the BIA found no "basis to set it aside as clearly erroneous." *Id.*

### 4. Petition to this Court

On October 7, 2024, Petitioners asked this Court to review the Board's final order of removal. They also concurrently filed a motion for stay of removal during the pendency of the appeal. The government moved to dismiss the petition and motion for lack of jurisdiction, arguing that they had been filed late. We denied the government's motion, and the parties proceeded to file their respective briefs on appeal.

## II. DISCUSSION

On appeal, Petitioners ask us to review and reverse the Board's rejection of Mr. Ali's asylum and CAT applications. They argue that the IJ erred in determining that Mr. Ali's testimony was not credible. Petitioners also contend that the IJ violated Mr. Ali's due process rights at the hearing.

### A. Standard of Review

If the Board of Immigration Appeals issues its own decision—as it did in this case—we review that decision as a final agency determination and review the IJ's reasoning to the extent the Board adopted it. *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023). We review the

Board's adverse credibility finding to determine if it is supported by substantial evidence. *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016). This is a highly deferential standard of review, and we treat the credibility finding as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Rubio-Mauricio v. Barr*, 782 F. App'x 444, 446–47 (6th Cir. 2019) (quotation omitted).

Mr. Ali bears the burden of proving that he is entitled to withholding of removal protection under both his asylum and CAT applications. For asylum, "[t]he burden of proof is on the applicant to establish that [he] is a refugee," 8 U.S.C. § 1158(b)(1)(B)(i), which requires him to at least show a "well-founded fear of persecution" in his home country, 8 U.S.C. § 1101(a)(42)(A). For CAT relief, the applicant bears the yet more demanding burden of proving either that his "life or freedom would be threatened in" his home country or that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(b), (c)(2). The applicant's testimony alone may suffice to meet these burdens of proof—so long as the factfinder finds it credible. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); 8 C.F.R. § 1208.16(c)(2).

## B. Analysis

### 1. The IJ's Adverse Credibility Finding

Petitioners argue that the Board improperly affirmed the IJ's determination that Mr. Ali lacked credibility and ask us to reverse that finding and grant his application for asylum, withholding of removal, and CAT protection. Petitioners contend that the IJ's determination should be reversed because it "improperly relied on minor inconsistencies" and ignored other consistent and corroborating evidence. Petitioners' Br. at 5. However, "[a]n adverse credibility finding is usually fatal," and Mr. Ali's case is no exception. *Rubio-Mauricio*, 782 F. App'x at 446.

Because we agree that that the adverse credibility finding was reasonable, we deny the petition for review.

To justify his adverse credibility finding, an IJ must articulate "specific reasons" that explain why he distrusted petitioner's version of events. *Koulibaly v. Mukasey*, 541 F.3d 613, 620 (6th Cir. 2008) (quotation omitted). The IJ in the instant case did just that. In his oral decision, he enumerated multiple specific grounds for his adverse credibility determination, focusing in particular on Mr. Ali's inconsistent testimony regarding: (1) Hiron Mia's presence during the alleged December 2021 and February 2022 attacks; (2) whether a written Bengali personal statement existed; (3) whether Awami League members attacked his father-in-law; and (4) the size and political importance of the LDP. The IJ also found that Mr. Ali's demeanor was not indicative of credibility, noting that he "was repeatedly evasive" and "[r]epeatedly nonresponsive," adding that "his evasiveness seemed largely to revolve around any adverse questioning." Admin. Rec., ECF No. 9-2, 102. These are reasonable grounds on which to base an adverse credibility determination.

Petitioners claim that these inconsistencies are minor and do not bear on the fundamental truth of their narrative, but this argument fails for two reasons. First, these inconsistencies do bear powerfully on the asylum and CAT claims "because they concerned the very reason why [Mr. Ali] feared persecution and fled." *See Bi Qing Zheng v. Lynch*, 819 F.3d 287, 295 (6th Cir. 2016). For instance, the inconsistencies in Mr. Ali's testimony about Hiron Mia's presence at his attacks cast doubt on whether these attacks happened in the way he alleges—or at all. Similarly, Mr. Ali's testimony about reviewing a Bengali version of his personal statement that the IJ had reason to believe did not exist imperils the fundamental trustworthiness of the entire personal statement and the narrative contained within it.

Second, evidentiary inconsistencies need not go to the heart of a petitioner's claim to justify an adverse credibility finding. *Id.* at 295. And the cumulative effect of even minor inconsistencies can support an adverse credibility finding. *Berri v. Gonzales*, 468 F.3d 390, 395 (6th Cir. 2006). In this case, the IJ was clearly concerned about the persistent contradictions "[t]hroughout [Mr. Ali's] entire narrative of events." Admin. Rec., ECF No. 9-2, 103. These systemic issues supported the IJ's determination that Mr. Ali's overall demeanor and presentation was "inconsistent, incoherent, and non-responsive." *Id.* To the extent that the IJ's adverse credibility determination was based on his impression of Mr. Ali's demeanor, we should be careful to defer to the IJ. *See Abdulahad v. Holder*, 581 F.3d 290, 294–95 (6th Cir. 2009).

Mr. Ali also argues that the IJ ignored other evidence corroborating his version of events—in particular, the newspaper article and medical records, which he claims relate to his February 2022 attack. This argument also fails. The IJ considered the article and determined that it actually exacerbated the credibility problems because it stated that Hiron Mia was present at the February attack, which "directly contradict[ed] [Mr. Ali's] narrative of events." Admin. Rec., ECF No. 9-2, 102; *see also Mardusha v. Mukasev,* 303 F. App'x 245, 246 n. l, 250 (6th Cir. 2008) (holding that there was not sufficient evidence to reverse finding of adverse credibility where applicant "submitted a newspaper article regarding her uncle's murder" that was inconsistent with her testimony at asylum hearing and that inconsistency went "to the heart of" her application for asylum). And, the fact that the IJ's decision does not explicitly discuss the medical record is immaterial—that note does not prove Mr. Ali's story. The note indicates that he was hospitalized from February 21, 2022 to February 23, 2022 and reports his symptoms, but states nothing about the alleged attack. Accordingly, these documents do not impact our assessment of the adverse credibility finding. *See Luna-Romero v. Barr*, 949 F.3d 292, 297 (6th Cir. 2020) (noting that the

Board did not err in reaching an adverse credibility determination where supposedly corroborating evidence did not "compel the conclusion that [the petitioner] was credible").

Because the IJ's adverse credibility finding was supported by significant inconsistencies in Mr. Ali's testimony and because Petitioners' other evidence does not rehabilitate his testimony, we hold that the IJ's adverse credibility finding was supported by substantial evidence and find no reason to reverse the Board's decision.

### 2. Denial of Petitioners' CAT Claim

Petitioners next argue that the IJ erred by failing to consider their CAT claim independently from the adverse credibility finding on their asylum claim. Petitioners are correct that, even where the credibility of an applicant's asylum claim is questioned, other reliable evidence may nonetheless establish CAT eligibility. *See, e.g.*, *Mapouya v. Gonzales*, 487 F.3d 396, 415 (6th Cir. 2007). But, if an applicant bases her CAT claim on the same non-credible grounds as her asylum claim, it is appropriate for the IJ to find that the applicant's CAT claim also fails for lack of credibility. *Bi Qing Zheng*, 819 F.3d at 296. In this case, Petitioners based their CAT and asylum claims on virtually the same grounds, meaning that the IJ's adverse credibility determination rightly applies to both.

The "independent," credible evidence that Petitioners argue supports their CAT claim are the country reports they submitted detailing the political conditions in Bangladesh. *See* Petitioners' Br. at 15. But, these documents alone do not compel CAT relief. To prove entitlement to CAT relief, an applicant must "demonstrate that she faces a *particularized* and likely threat of torture at the hands of a public official, or with the consent or acquiescence of a public official." *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020) (emphasis added). The country reports do "not demonstrate a threat of torture personal to" Petitioners—they merely discuss political oppression

in Bangladesh generally. *Id.* at 590. Indeed, we have previously held that generalized country-condition reports are insufficient to show that an applicant personally faces a particularized threat of torture. *See Bonilla-Cruz v. Bondi*, 2025 WL 488765, at *3 (6th Cir. Feb. 13, 2025).

All additional evidence Mr. Ali submitted that was personal to him was appropriately deemed not credible by the IJ. Accordingly, there was nothing left in the record that could have proven Petitioners' CAT eligibility. We thus hold that the Board did not err by denying Petitioners' request for CAT relief on the same adverse credibility grounds as it did Petitioners' asylum claim.

### 3. Petitioners' Procedural Due Process Argument

Finally, Petitioners argue that the IJ violated their due process rights when it instructed Mr. Ali to ask for clarification if he did not understand a question, but later faulted him for asking clarifying questions. Petitioners appear to argue that the IJ deprived them of fair process by telling Mr. Ali to ask clarifying questions, then factoring Mr. Ali's requests for clarification into the determination that he was being evasive. Although Petitioners do not say so in their brief, this is a procedural due process argument. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) ("Procedural due process is…the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property.") (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992)).

We will not reach the merits of this argument. We have made clear that a "[noncitizen] must raise correctable procedural errors to the BIA" for us to consider them on appeal. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Petitioner did not raise this issue below. Because the government properly raised Petitioners' failure to exhaust this argument before the agency, *see* Respondent's Br. at 28 n.12, we find that Petitioners waived this procedural due process argument and decline to consider it, *see Mazariegos-Rodas v. Garland*, 122 F.4th 655, 666 (6th Cir. 2024).

### III. CONCLUSION

For the reasons set forth above, we **DENY** the petition for review.